IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-189-FL

| | |
|---|---|
| FREDDIE W. BARNES, JR., ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Claimant Freddie W. Barnes, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB and for SSI on 23 July 2007 and 29 February 2008, respectively, alleging an amended disability onset date of 1 March 2008. (R. 13, 15, 50). Both claims were denied initially and upon reconsideration. (R. 81-

82, 85-87, 94-96). A hearing before the Administrative Law Judge ("ALJ") was held on 6 January 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 48). On 9 February 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-19). On 11 March 2010, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper assessment of Claimant's residual functional capacity ("RFC");

and (3) improper reliance on the VE's testimony. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 4, 6 ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: diabetes, hypertension, chronic obstructive pulmonary disease ("COPD"), emphysema, pancreatitis and right shoulder pain. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] in an environment free of respiratory irritants. (R. 17). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. *Id.* At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an asphalt distribution tender, asphalt raker and asphalt paving operator. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 18).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 50 years old and unemployed. (R. 52, 54). Claimant attained an eleventh grade education. (R. 53). Claimant was last employed as a foreman for an asphalt paving company. (R. 54). Claimant testified that his physician instructed him to stop working due to COPD, which was exacerbated by the heat, humidity and fumes associated with asphalt paving.[2] (R. 59-60, 62).

Claimant testified about pain and other symptoms associated with COPD, the removal of his pancreas, diabetes, polyps, high blood pressure and his right shoulder. (R. 60, 63, 66-67, 69-71). Claimant testified that he has been hospitalized on three separate occasions since July 2007 as a result of breathing difficulties. (R. 61, 65-66). Claimant uses an inhaler up to four times daily and uses a nebulizer twice a day. (R. 61). Claimant testified that his pancreas was removed prior to 2007 as a result of his past dependence on alcohol. (R. 60). Claimant attributed recent stomach pain to his removed pancreas and testified to experiencing weekly stomach aches over the last two months. (R. 69-70). Claimant takes medication for diabetes four times a day and checks his blood sugar twice a day. (R. 63-64). Claimant testified that most of his polyps have been removed; however, he continues to experience bleeding. (R. 66-68). As a result of this blood loss, Claimant takes iron pills. (R. 68). Claimant takes medication for his blood pressure which fluctuates depending on his

---

[2] Claimant initially testified, without further elaboration, that he stopped working because of "[his] hip." (R. 55). The court observes that Claimant did not identify hip pain as an impairment affecting his ability to work. (R. 146). Furthermore, Claimant's counsel did not elicit testimony as to the symptoms associated with Claimant's alleged hip impairment and the court has found no medical documentation regarding the same.

pain level. (R. 69). Claimant experiences right shoulder pain due to a torn ligament, which occurred approximately five months prior to the administrative hearing. (R. 70). Claimant testified that "a pain doctor" treats Claimant's shoulder and the pain medication helps "[a] little." (R. 71). Claimant testified that due to right shoulder pain, he cannot pick up heavy items with his right hand and he has difficulty lifting his right arm above his shoulder. (R. 71).

Claimant testified that following 10-15 minutes of activity, he experiences shortness of breath and must rest for up to 30 minutes. (R. 62). Claimant testified that he "tr[ies]" to vacuum, cook and mow the lawn. (R. 62-63). Claimant has difficulty washing his hair and putting on clothes due to pain associated with raising his arm above his head. (R. 72). In an effort to lose weight as advised by his physician, Claimant testified that he "used" to exercise but for no more than 15 minutes at a time due to ensuing fatigue and breathing difficulties. (R. 63). Claimant testified that he had no health insurance and cannot always afford his medications. (R. 64).

### III. Vocational Expert's Testimony at the Administrative Hearing

Judith Sedor testified as a VE at the administrative hearing. (R. 73-79). After the VE's testimony regarding Claimant's past work experience (R. 74-75), the ALJ posed two hypothetical questions to the VE. First, the ALJ asked whether light, unskilled jobs existed for an individual of the same age and with the same education and work experience as Claimant who is unable to work in an environment with significant amounts of respiratory irritants such as dust, fumes and smoke. (R. 76). The VE testified that such a person could perform the requirements of the following representative occupations which exist in significant numbers regionally and nationally: (1) injection molding machine tender (DOT #556.685-038), (2) inspector and hand packager (DOT #559.687-074) and (3) electronics worker (DOT #726.687-010). (R. 77-78).

Second, the ALJ asked the VE whether an individual with the same vocational background and RFC as stated in the first hypothetical and who has "all of the limitations that the claimant has described in his testimony" would be able to perform any of the above jobs, to which the VE responded in the affirmative. (R. 78). In response to questions from Claimant's counsel, the VE testified that the representative positions would not be available if an individual required a 30 minute break after every 10 to 15 minutes of work or was unable to perform frequent reaching or handling. (R. 79).

## DISCUSSION

### I. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 5. Specifically, Claimant contends the ALJ's credibility discussion is "devoid of any analysis." Pl.'s Mem. at 5-6. This court agrees.

Federal regulations, 20 C.F.R. §§ 404.1529(a) and 416.929(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily

activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

After setting forth the standard for evaluating a claimant's credibility, the ALJ provided a limited discussion of Claimant's testimony, focusing solely on Claimant's previous work for an asphalt paving company, his aversion to the fumes and chemicals in the asphalt and his resulting decision to stop working for that company. (R. 17). Thereafter, the ALJ concluded as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 17). The ALJ provided no further discussion as to Claimant's testimony or the objective evidence with the exception of an RFC assessment dated 12 December 2007 which the ALJ accorded "great weight." (R. 17-18).

Review of the ALJ's opinion reveals that the ALJ did provide a summary of the objective evidence; however, he limited his discussion of this evidence to step three of the sequential evaluation process. (R. 17-18). While "[s]uch collapsing of the analysis of the evidence by an ALJ

8

is not the preferred form of opinion writing for an ALJ because it makes review of his opinions more difficult, [] it is not necessarily reversible error." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, at *7-8, 2009 WL 455414, at *3 (E.D.N.C. Feb. 23, 2009) (citing *McCartney v. Apfel*, 28 Fed. Appx. 277, 279 (4th Cir. 2002) (finding that an ALJ's analysis of medical evidence at step three instead of step four was not error because "the ALJ need only review medical evidence once in his decision")). Within the step three analysis, the ALJ discussed Claimant's medical records from February 2007 through October 2008 and acknowledged Claimant's history of diabetes mellitus, hypertension, hyperlipidemia, pancreatitis, colon polyps and COPD. (R. 15). The ALJ noted that since Claimant's alleged onset date (1 March 2008), Claimant had been treated for hypertension, type II diabetes mellitus, hyperlipidemia, COPD and right shoulder pain.

In discussing the specifics of Claimant's medical records, the ALJ focused primarily on Claimant's treatment for COPD, the impairment responsible for Claimant's decision to resign from his last position. (R. 59-60, 62). With respect to COPD, the ALJ noted that in February 2007, Claimant underwent pulmonary function studies which revealed moderate obstructive airway dysfunction. (R. 15, 247). The ALJ acknowledged Claimant's July 2007 admission to the hospital with complaints of chest pain and a multiple diagnosis including COPD. (R. 16, 223). The ALJ noted that on 21 September 2007, Donald Woodburn, M.D., reported in a letter that Claimant's COPD appeared to be well-controlled; however, Claimant was unable to work due in part to chest pain. (R. 16, 264). However, on 20 October 2007, the ALJ noted that Claimant was hospitalized for complaints of shortness of breath and chest pain. (R. 16, 293). Testing indicated that Claimant's cardiac enzymes were negative and his EKG and x-rays were normal. (R. 16, 286). Claimant's diagnosis was COPD exacerbation but after administration of medications, his symptoms were

alleviated. (R. 16, 286). The ALJ observed that Claimant was hospitalized again 11 April 2008 with complaints of shortness of breath and wheezing. (R. 16, 352). A chest x-ray showed questionable small pleural effusion and Claimant's diagnosis was COPD exacerbation. (R. 16, 339, 352). The ALJ acknowledged also Claimant's pulmonary function studies performed 26 June 2008. (R. 378). The ALJ noted that Claimant had been repeatedly advised to quit smoking. (R. 15, 220, 250). In June 2008, Claimant reported that he had been cutting back on smoking since starting on Chantix and in fact had not smoked at all in the past month; however, in a progress note dated 2 October 2008, Claimant admitted to smoking 1-2 cigarettes a day. (R. 16, 366, 376-77). The ALJ noted also that as of October 2008, Claimant was taking Spiriva and Pulmicort for his COPD. (R. 16, 367). The court finds that the ALJ provided an adequate and fair summary of the medical records as they pertain to COPD.

However, the court does not find that the ALJ adequately summarized medical records pertaining to Claimant's shoulder. In his analysis of the medical evidence at step three, the ALJ noted that a 13 February 2008 MRI of Claimant's shoulder revealed a small, full thickness tear of the supraspinatus tendon and acromioclavicular osteoarthritis causing impingement. (R. 16, 354). The ALJ acknowledged also that an April 2008 x-ray of Claimant's right shoulder showed mild degenerative spurring, but no inflammation, fracture or dislocation. (R. 16, 350). However, the ALJ provided no further discussion of Claimant's shoulder impairment despite subsequent progress reports in June and August 2008 indicating Claimant was referred to a pain clinic for further management of his shoulder pain and had difficulty lifting his right arm, had a limited range of motion with his right shoulder and "endorse[d] some weakness," respectively. (R. 372, 381). The August progress report ignored by the ALJ indicates further that Claimant had received "[i]njections

[which] yielded no positive results," and that Claimant has "some pain in his [right] arms and hands, with occasional swelling of his fingers." (R. 372). Finally, the court observes that Claimant's complaints and treatment of shoulder pain occurred in 2008, and thus subsequent to the December 2007 RFC assessment upon which the ALJ accorded "great weight" – the only objective evidence upon which the ALJ relied in step four. (R. 17, 330).

In addition to ignoring objective evidence supportive of Claimant's testimony as to his right arm limitations, as indicated above, the ALJ provided a minimal summary of Claimant's testimony. It is not evident from the decision whether the ALJ considered Claimant's testimony concerning his daily activities, the location, duration, frequency and intensity of the symptoms associated with Claimant's shoulder impairment and COPD, factors that aggravate Claimant's symptoms, Claimant's reliance on a nebulizer and inhaler and use of medication for his shoulder pain and Claimant's treatment at a pain clinic.

Defendant argues that the ALJ's credibility analysis is sufficient, pointing out first the ALJ's discussion of the objective medical evidence concerning Claimant's COPD at step three. Def.'s Mem. Supp. Mot. Summ. J. at 13. As the court explained above, discussion of objective evidence at step three does not constitute reversible error and the court agrees that the summary of Claimant's COPD treatment is adequate. Defendant contends further that "physical examination findings consistently showed that [Claimant] had normal range of motion of all of his extremities, including his right arm and shoulder, that he had no motor or sensory deficit and that his symptoms were alleviated with medication." In support of this argument, Defendant relies on treatment records

11

dated 20 October 2007,[3] 11 April 2008, 28 August 2008 and 2 October 2008.

The court notes initially that these records do not support fully Defendant's characterization of Claimant's shoulder impairment. Defendant correctly notes that the April 2008 report indicated that Claimant's extremities exhibited a normal range of motion, had no sensory deficit and normal reflexes. (R. 333). The August 2008 progress report indicated, however, that Claimant had difficulty lifting his right arm, had a limited range of motion with his right shoulder and "endorse[d] some weakness." (R. 372). While the reported implied further that Claimant's pain, described as "not . . . well controlled lately," may have been due not taking "any hydrocodone in the past month," there is nothing in the medical report to suggest a failure to take medication on Claimant's part. (R. 372). It is not apparent how the October 2008 report is relevant to Claimant's shoulder pain as it appears the express purpose of that visit was for treatment of symptoms associated with COPD. (R. 366).

More importantly, in summarizing Claimant's testimony and in evaluating the credibility thereof, the ALJ did not discuss the evidence upon which Defendant relies. While the ALJ referenced the April 2008 report, he did not discuss the physical examination findings. (R. 16). While an ALJ need not refer to every physical observation in evaluating a Claimant's impairment, *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, *4 (E.D.N.C. July 15, 2009), here, the ALJ never mentioned any physical examination findings regarding Claimant's shoulder nor did he discuss Claimant's testimony as to his shoulder limitations. As noted earlier, the ALJ discussed the October 2008 progress report but as stated above, it is not

---

[3] Claimant testified that his shoulder pain did not arise until 2008; accordingly, Defendant's reliance on the October 2007 report is misplaced. (R. 70).

12

apparent how this report played a role in the ALJ's consideration of Claimant's credibility as to his alleged shoulder pain. Despite Defendant's explanation as to why Claimant's statements are not entirely credible, this court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]." *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency)).

While it is not the province of this court to weigh the evidence considered by the ALJ, the court must consider whether the ALJ considered and analyzed all the relevant evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. The ALJ may not select and discuss only that evidence that favors his ultimate conclusion. *See Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) (explaining the ALJ "cannot 'pick and choose' only the evidence that supports his position"); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Here, evidence exists that suggests Claimant's description of his shoulder impairment and resulting pain and limitations is at least partially supported by the objective evidence. Furthermore, the ALJ provided no summary of Claimant's testimony regarding his alleged shoulder pain; thus, it is not evident that the ALJ considered that testimony. Accordingly, the court cannot find that the ALJ's credibility finding is supported by substantial evidence. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (remand is appropriate where ALJ fails to discuss relevant evidence weighing against his decision) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). Because this court finds that remand on the issue of credibility will affect the remaining issues raised by Claimant, it does not address

those arguments.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of March, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge